FILED
2012 Feb-27  PM 04:26
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **ELAINE HARRIS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 2:11-CV-2446-VEH** |
| | ) |
| **BOARD OF TRUSTEES** | ) |
| **UNIVERSITY OF ALABAMA,** | ) |
| **UAB HEALTH SYSTEM, and UAB** | ) |
| **HOSPITAL/CENTER FOR** | ) |
| **PSYCHIATRIC MEDICINE,** | ) |
| | ) |
| **Defendants.** | ) |

---

## <u>MEMORANDUM OPINION</u>

This employment discrimination action is before the court on the Motion To

Dismiss or For Summary Judgment[1] (the "Motion") (doc. 13) filed by Defendant

Board of Trustees University of Alabama ("Board of Trustees" or "Defendant").  The

Motion presents several jurisdictional challenges and requests dismissal pursuant to

---

[1]  Although the title of the Defendant's Motion purports to contain an alternate request "for summary judgment," that request is not developed in the text of the Motion and is completely without argument, much less factual or legal support.  Therefore, to the extent the Board's Motion seeks summary judgment, that request is due to be denied because the court is not obligated to consider underdeveloped arguments.  *See Flanigan's Enters., Inc. v. Fulton County, Ga.*, 242 F.3d 976, 987 n.16 (11th Cir. 2001) (holding that a party waives an argument if the party "fail[s] to elaborate or provide any citation of authority in support" of the argument); *Ordower v. Feldman*, 826 F.2d 1569, 1576 (7th Cir. 1987) (stating that an argument made without citation to authority is insufficient to raise an issue before the court).

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  Plaintiff Elaine Harris ("Ms. Harris" or "Plaintiff") has responded to the Motion with a response (doc. 17), two supplemental responses (docs. 19 and 25), and the Board of Trustees filed its reply[2] (doc. 22).  Accordingly, the Motion is under submission and ripe for the court's decision.

For the reasons that follow, the court finds that the Motion is due to be **GRANTED** and, accordingly, the Board of Trustees is due to be dismissed from this case.

## I.    FACTUAL AND PROCEDURAL HISTORY

Plaintiff is an African-American female over the age of 40 who avers that she was "jointly and severally" employed by the three Defendants named in this action.[3] (Complt. ¶¶ 6, 11).  At all times relevant to her Complaint, Plaintiff was working in various positions as a licensed practical nurse at UAB Hospital/Center for Psychiatric Medicine.  (Complt. ¶ 10).

On February 5, 2010, Plaintiff filed a charge against her employers with the Equal Employment Opportunity Commission ("EEOC") alleging racial discrimination

---

[2]  The Board of Trustees' reply brief is incorrectly titled as a "response" brief.

[3]  A similar Motion To Dismiss has been filed by the other two Defendants to this action, UAB Health System and UAB Hospital/Center for Psychiatric Medicine (collectively referred to as "UAB Health System"), see doc. 14, and the court addresses the arguments raised in that motion in a separate Memorandum Opinion.

and retaliation, sex discrimination, age discrimination, and equal pay discrimination.[4]
(Complt. ¶ 4; Doc. 17-1).  Plaintiff's EEOC charge (Charge No. 420-2010-01057)
was investigated, and Plaintiff received a Dismissal and Notice of Rights letter dated
April 7, 2011, which indicated the EEOC's intent to close the file without making any
affirmative findings and authorized Plaintiff to file a lawsuit in federal or state court
within 90 days.  (Complt. Ex. 1).

Plaintiff initiated this lawsuit on July 5, 2011, within 90 days of receiving her
Notice of Rights letter.  In shotgun fashion,[5] she asserts the claims in her Complaint
generally against all three Defendants, without designating specific claims against
each Defendant.  Although not numbered, Plaintiff's claims against Defendants

---

[4] Although Plaintiff's EEOC charge included allegations of sex discrimination,
presumably under Title VII, and equal pay discrimination, presumably under the Equal Pay Act
of 1963, 29 U.S.C. § 206 *et seq.*, her Complaint in this case does not raise those two claims, nor
does it contain any statement of facts supporting those two claims, therefore they are not before
the court.  *See* Fed. R. Civ. P. 8 ("A pleading that states a claim for relief must contain . . . a short
and plain statement of the claim showing that the pleader is entitled to relief."); *Bell Atlantic
Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6)
motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide
the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a
formulaic recitation of the elements of a cause of action will not do . . . ." (internal citations
omitted)).

[5] Instead of pleading each claim against each Defendant(s) as separately numbered
counts, Plaintiffs' complaint is lumpily pled and in its present form violates the Eleventh
Circuit's admonishment against shotgun pleading as explained in *Davis v. Coca-Cola Bottling
Co. Consol.*, 516 F.3d 955 (11th Cir. 2008) and the related cases cited to therein.  *See Davis*, 516
F.3d at 979 ("The complaint is a model 'shotgun' pleading of the sort this court has been
roundly, repeatedly, and consistently condemning for years, long before this lawsuit was filed.").

essentially constitute eight different counts:

(1)     Race discrimination (based on unequal pay, hostile work environment, and disparate impact) under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") (Comlt. ¶¶ 26-58);

(2)     Retaliation under Title VII (Complt. ¶¶ 59-64);

(3)     Retaliation under 42 U.S.C. § 1981, brought by and through 42 U.S.C. § 1983 (Complt. ¶¶ 59-64);

(4)     Violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution, brought by and through § 1983 (Complt. ¶¶ 65-72);

(5)     Age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* (Complt. ¶¶ 73-82);

(6)     Breach of contract under state law (Complt. ¶¶ 83-90);

(7)     Quantum Meruit under state law (Complt. ¶¶ 91-95); and

(8)     Attorneys Fees under 42 U.S.C. § 1988.

Thus, Plaintiff alleges claims under the federal constitution and three different federal statutes (Title VII, § 1981, and the ADEA) in addition to her state law claims. Plaintiff asserts federal question jurisdiction pursuant to 28 U.S.C. § 1331 and original jurisdiction based on her civil rights claims pursuant to 28 U.S.C. § 1343(a)(4) ("The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person . . . [t]o recover damages or to secure equitable or other relief under any Act of Congress providing for the

protection of civil rights, including the right to vote.").  (Complt. ¶ 2).

The Board of Trustees filed its Motion To Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  The Board of Trustees fashions four main arguments for dismissal: (1) Plaintiff failed to exhaust her administrative remedies on her Title VII and ADEA claims (doc. 13 ¶¶ 1-4); (2) sovereign and Eleventh Amendment immunity bar Plaintiff's claims "under [all] federal statutes other than Title VII" (*id.* at 5); (3) governmental immunity under the Alabama Constitution bars "[a]ny state law claims" against the Board of Trustees (*id.* ¶¶ 6-7); and (4) generally, that Plaintiff has failed to state a plausible claim against the Board of Trustees because  Plaintiff has not shown that it is her "employer" (*id.* ¶ 1; doc. 22 at 2-4). Accordingly, the Board of Trustees asks the court to dismiss all claims against it "for lack of jurisdiction."  (Doc. 13 at 3).

The Motion, however, fails to designate which of its arguments for dismissal are brought pursuant to Rule 12(b)(1) versus Rule 12(b)(6).  Generally, jurisdictional challenges are addressed under Rule 12(b)(1), whereas Rule 12(b)(6) provides for dismissal for failure of a party to state a claim for which relief can be granted.  *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (stating that where "a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack

on the merits." (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)).[6]

In this case, immunity is the only issue the Board of Trustees raises that is arguably

subject to the Rule 12(b)(1) jurisdictional standard.[7]

Eleventh Amendment immunity is a jurisdictional issue. *Edelman v. Jordan*,

415 U.S. 651, 678 (1974) (holding that the Eleventh Amendment immunity defense

"partakes of the nature of a jurisdictional bar" sufficient that it may be raised for the

first time on appeal); *McClendon v. Georgia Dep't of Cmty. Health*, 261 F.3d 1252,

1256 (11th Cir. 2001) ("Because the Eleventh Amendment represents a constitutional

---

[6] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit).

[7] Exhaustion of administrative remedies in Title VII cases functions as an administrate precondition to suit, rather than a jurisdictional prerequisite that would trigger application of Rule 12(b)(1). *See Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393 (1982) ("We hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."); *Jackson v. Seaboard Coast Line R. Co.*, 678 F.2d 992, 1003 (11th Cir. 1982) (citing *Zipes* and concluding "that the conditions precedent to filing a Title VII suit are not jurisdictional prerequisites"). As such, the court finds that it is more appropriately treated under the Rule 12(b)(6) failure to state a claim standard. *See, e.g., McIntyre v. Aurora Cares, LLC*, No. CA 10–0208–KD–C, 2011 WL 2940939, at *2 n.3 (S.D. Ala. July 21, 2011) ("[C]ourts tend to treat such motions as seeking dismissal in accordance with Rule 12(b)(6) as opposed to Rule 12(b)(1)."); *Banks v. Ackerman Security Systems, Inc.,* No. 1:09-CV-0229-CC, 2009 WL 974242, at *2 n. 3 (N.D. Ga. April 10, 2009) ("The Court dismisses these claims pursuant to Rule 12(b)(6) rather than 12(b)(1) because exhaustion of administrative remedies is not a jurisdictional prerequisite."); *Crawford v. Winter,* No. 2:07-cv-702-FtM-29SPC, 2008 WL 3260509, at *1 (M.D. Fla. Aug.7, 2008) (considering motion to dismiss for failure to exhaust administrative remedies pursuant to Rule 12(b)(6) rather than Rule 12(b)(1)); *but see Luke v. Residential Elevators, Inc*., No. 4:10-cv-00524-SPM-WCS, 2011 WL 311370, at *4 (N.D. Fla. Jan. 28 2011) ("Failure to exhaust administrative remedies prior to filing suit warrants dismissal based upon lack of subject matter jurisdiction under Rule 12(b)(1).").

limitation on the federal judicial power established in Article III, federal courts lack

jurisdiction to entertain claims that are barred by the Eleventh Amendment." (citation

omitted)).   However,

> ...[t]he jurisdictional bar embodied in the Eleventh Amendment
> is a "rather peculiar kind of 'jurisdictional' issue." *United States v. SCS
> Bus. & Tech. Inst., Inc.*, 173 F.3d 890, 892 (D.C. Cir. 1999).  Unlike
> most subject matter jurisdiction issues, which cannot be waived by the
> parties and must be raised by a court on its own initiative, the Eleventh
> Amendment does not automatically deprive a court of original
> jurisdiction. *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381,
> 389, 118 S. Ct. 2047, 2052, 141 L. Ed.2d 364 (1998); *see Calderon v.
> Ashmus*, 523 U.S. 740, 745 n. 2, 118 S. Ct. 1694, 1697 n. 2, 140 L.
> Ed.2d 970 (1998) ("While the Eleventh Amendment is jurisdictional in
> the sense that it is a limitation on the federal court's judicial power, ...
> we have recognized that it is not coextensive with the limitations on
> judicial power in Article III.").  "Rather," the Supreme Court has
> explained, "the Eleventh Amendment grants the State a legal power to
> assert a sovereign immunity defense should it choose to do so."
> *Schacht*, 524 U.S. at 389, 118 S. Ct. at 2052.  This understanding of the
> Eleventh Amendment as a volitional defense is manifest in decisions
> allowing it to be waived by the state, *see, e.g., Atascadero State Hosp.
> v. Scanlon*, 473 U.S. 234, 241, 105 S. Ct. 3142, 3146-47, 87 L. Ed.2d
> 171 (1985), or ignored by the court if not raised, *see, e.g., Patsy v. Bd.
> of Regents of Fla*., 457 U.S. 496, 515 n. 19, 102 S.Ct. 2557, 2567, n. 19,
> 73 L.Ed.2d 172 (1982).  Thus, unlike other jurisdictional bars, federal
> courts are required to consider whether the Eleventh Amendment strips
> them of jurisdiction only if the state defendant insists that it does.

*McClendon*, 261 F.3d at 1257.  As a result, courts have treated immunity issues under

both 12(b)(1) and 12(b)(6).  *Compare Shands Teaching Hosp. and Clinics, Inc. v.

Beech Street Corp*., 208 F.3d 1308, 1310 (11th Cir. 2000) (reviewing district court's

dismissal based on the State's Eleventh Amendment immunity under Rule 12(b)(6) for failure to state a claim upon which relief can be granted), *with Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1304 (11th Cir. 2011) ("The [district] court dismissed the claims against the Board of Regents, the Members, and the University Officials, who were sued in their official capacities, under Rule 12(b)(1) on the Eleventh Amendment immunity ground.").

The Eleventh Circuit, in an unpublished opinion, recently indicated that Eleventh Amendment immunity analysis is more appropriately conducted under 12(b)(1) where it does not implicate the merits.  *See Thomas v. U.S. Postal Service,* 364 Fed. App'x 600, 601 (11th Cir. 2010) ("[A] dismissal on sovereign immunity grounds should be pursuant to Rule 12(b)(1) because no subject-matter jurisdiction exists." (citing *Bennett v. United States*, 102 F.3d 486, 488 n.1 (11th Cir. 1996)); *Bennett*, 102 F.3d at 488 ("Rule 12(b)(1) of the Federal Rules of Civil Procedure provides a vehicle for the dismissal of actions for lack of subject matter jurisdiction. Nevertheless, where---as here---the existence of subject matter jurisdiction is <u>inextricably intertwined with material facts affecting the merits of the claim</u>, a district court must be guided by the standard for summary judgment motions under Fed. R. Civ. P. 56." (emphasis added) (citations omitted)).  Because, the analysis of this Defendant's immunity arguments are not "inextricably intertwined with material facts

affecting the merit of the claim," the court feels it is appropriate to consider those arguments under the 12(b)(1) standard.[8]  *See, e.g., Ostroff v. State of Fla., Dep't of Health & Rehab. Servs.*, 554 F. Supp. 347, 355 n.13 (M.D. Fla. 1983) (electing to analyze the state agency defendant's Eleventh Amendment defense under Rule 12(b)(1)).[9]

Therefore, the court organizes its Memorandum Opinion by first analyzing the Defendant's immunity defenses under the Rule 12(b)(1) standard, and then analyzing the Defendant's exhaustion of remedies arguments under the Rule 12(b)(6) standard.

## II.   IMMUNITY DEFENSES

### A.   Legal Standard

In part, Defendant brings its Motion To Dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, which allows a party to assert the defense of lack of subject-matter jurisdiction.  A motion to dismiss based on lack of subject-matter

---

[8]  The court recognizes the Eleventh Circuit's word of "caution" that a "district court should only rely on Rule 12(b)(1) '[i]f the facts necessary to sustain jurisdiction *do not implicate the merits of plaintiff's cause of action.*'"  *Morrison v. Amway Corp.*, 323 F.3d 920, 925 (11th Cir. 2003) (emphasis in original) (citation omitted).  However, in this case, analysis of the Defendant's immunity arguments does not implicate the merits of Plaintiff's cause of action because the immunity is based solely on the Defendant's status as a state agency.

[9]  Although the court chooses to analyze the Defendant's immunity defenses under the Rule 12(b)(1) standard in this particular case, the court notes that application of the Rule 12(b)(6) standard would not affect the outcome of the analysis.  As the court noted in *Ostroff*, "[i]n any event, whether Eleventh Amendment immunity is considered a jurisdictional defense or some other sort of defense (e.g., failure to state a claim upon which relief can be granted), the Court's analysis would be substantially the same."  554 F. Supp. at 355 n.13.

jurisdiction should be granted "only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Ramming,* 281 F.3d at 161.  Lack of subject-matter jurisdiction may be found through an examination of: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts and the court's resolution of disputed facts.  *Id.*  Because the burden of proof on a motion to dismiss for lack of subject-matter jurisdiction is on the party asserting jurisdiction, the plaintiff "constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming*, 281 F.3d at 161 (citing *McDaniel v. United States*, 899 F. Supp. 305, 307 (E.D. Tex. 1995) and *Menchaca v. Chrysler Credit Corp*, 613 F.2d 507, 511 (5th Cir. 1980)).

Attacks on subject-matter jurisdiction take two forms: (1) facial attacks, and (2) factual attacks.  *Scarfo v. Ginsberg*, 175 F.3d 957, 960 (11th Cir. 1999) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).  Facial attacks on a complaint "require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [plaintiff's] complaint are taken as true for the purposes of the motion." *Lawrence*, 919 F.2d at 1529 (quoting *Menchaca*, 613 F.2d at 511).  Factual attacks challenge "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside

10

the pleadings, such as testimony and affidavits, are considered." *Id.* (same).

If a defendant makes a factual attack upon the court's subject matter jurisdiction, submitting evidentiary materials, the plaintiff is "also required to submit facts through some evidentiary method and has the burden of proving by a preponderance of the evidence that the trial court does have subject matter jurisdiction." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).

"[A] plaintiff must have ample opportunity to present evidence bearing on the existence of jurisdiction." *Morrison*, 228 F.3d at 1273 (quoting *Colonial Pipeline Co. v. Collins*, 921 F.2d 1237, 1243 (11th Cir. 1991)). "Although the plaintiff bears the burden of proving the court's jurisdiction, the plaintiff should be given the opportunity to discover facts that would support his allegations of jurisdiction." *Morrison*, 228 F.3d at 1273 (quoting *Majd-Pour v. Georgiana Cmty. Hosp., Inc.*, 724 F.2d 901, 903 (11th Cir. 1984)).

## B.    Eleventh Amendment Immunity

The Board of Trustees correctly asserts that Eleventh Amendment immunity is applicable to all of Plaintiff's federal claims against it, other than Title VII. (Doc. 13 ¶ 5). In support of its immunity argument, the Board of Trustees cites to *Quern v. Jordan,* 440 U.S. 332 (1979), *Kimel v. Florida Board of Regents*, 528 U.S. 62 (2000), and *Butts v. County of Volusia*, 222 F.3d 891, 894-95 (11th Cir. 2000).

The Eleventh Amendment provides that

> [t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another State, or by citizens or subjects of any foreign state.

U.S. Const. amend. XI. "It is firmly established that the Eleventh Amendment immunizes unconsenting states from private suits in federal courts for retrospective money damages, whether brought by their own citizens or by citizens of other states." *Ostroff*, 554 F. Supp. at 355 (citing *Hans v. Louisiana*, 134 U.S. 1, 1 (1890); *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974)). A state's Eleventh Amendment immunity also extends to statewide agencies. *Id.* (citing *Fla. Dep't of Health & Rehab. Servs. v. Fla. Nursing Home Assoc.*, 450 U.S. 147 (1981)).

A court faced with a claim of Eleventh Amendment immunity must first determine whether the plaintiff is suing the state. This often involves deciding whether the entity raising the defense can be considered an "agency or instrumentality" of the state. State law guides this determination. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 280 (1977); *Sessions v. Rusk State Hosp.,* 648 F.2d 1066, 1069 (5th Cir. Unit A June 1981).

The Eleventh Circuit has determined that state universities in Alabama, as arms of the state, are entitled to Eleventh Amendment immunity. *Harden v. Adams,* 760

F.2d 1158, 1163 (11th Cir. 1985) (holding that the Eleventh Amendment bars suit under 42 U.S.C. § 1983 against Troy State University); *see also Davis v. Alabama State Univ.,* 613 F. Supp. 134, 139-40 (M.D. Ala. 1985) (holding that the Eleventh Amendment protects Alabama State University from former employee's § 1983 suit). Additionally, in *Eubank v. Leslie*, 210 Fed. App'x 837, 844-45 (11th Cir. 2006), a panel of the Eleventh Circuit specifically applied this doctrine to the University of Alabama Board of Trustees, deeming it a "state agency" and affirming the district court's decision that the plaintiff's civil rights claims against the Board under 42 U.S.C. §§ 1983 and 1985 were barred by state sovereign immunity.

These cases compel the court to find that the Defendant Board of Trustees is an agency or instrumentality of the state that is generally immune from suits brought by citizens for monetary relief, absent consent or waiver, as discussed above.

In her response, Plaintiff acknowledges that while "Defendant would normally enjoy immunity from her age discrimination and § 1981 claims . . . this immunity was waived by [D]efendants entering the non-governmental joint venture documented in Exhibit B." (Doc. 17 at 11) (emphasis added). However, as further discussed *infra*, the court does not consider Plaintiff's Exhibit B, which is completely

unauthenticated, as credible or persuasive[10] evidence in support of her joint and

several liability theory.  More importantly, Plaintiff cites to no case or authority on

point that supports her waiver theory.  The court therefore agrees with the Board of

Trustees that it enjoys Eleventh Amendment immunity from Plaintiff's federal claims

(other than Title VII) insofar as they seek retrospective money damages.

An exception to Eleventh Amendment immunity exists concerning prospective

relief to enjoin continuing violations of the federal constitution.[11]  As explained by

the Eleventh Circuit, the exception "is derived from *Ex Parte Young*, 209 U.S. 123,

28 S. Ct. 441, 52 L. Ed. 714 (1908), which held that official capacity suits for

prospective relief to enjoin state officials from enforcing unconstitutional acts are not

deemed to be suits against the state and thus are not barred by the Eleventh

Amendment."  *Scott v. Taylor,* 405 F.3d 1251, 1255 (11th Cir. 2005).  "In such cases,

it is the individual and not the state which is being sued, and when a state official acts

unconstitutionally, he is stripped of his official or representative character and

---

[10]  Plaintiff's Exhibit B would be insufficient even if it were authenticated and stood for what Plaintiff says it stands for.  Plaintiff states, "[a]t minimum, this joint agreement gives rise to the presumption that Defendant Board of Trustees probably formulates and/or approves employment policies and practices with the other named [D]efendants." (Doc. 17 at 6) (emphasis added). The court disagrees with the presumption asserted, which is tenuous at best.  Moreover, Plaintiff pairs her argument with no case law or other authority demonstrating that such a "probable" presumption would give rise to a "non-governmental joint venture," or that such a "venture" would abrogate Eleventh Amendment immunity.

[11]  The exception also extends to monetary relief, including costs, that is ancillary to such prospective injunctive relief.  *Kentucky v. Graham*, 473 U.S. 159, 169 n.18 (1985).

14

Eleventh Amendment protection." *Williams v. Ala. State Univ.*, 865 F. Supp. 789, 792 (M.D. Ala. 1994) (emphasis added) (citing *Ex parte Young*, 209 U.S. at 159–60), *rev'd on other grounds*, 102 F.3d 1179 (11th Cir. 1997).

Accordingly, there exists reasonable doubt that the prospective relief exception to Eleventh Amendment immunity reaches state agencies such as the Board of Trustees.  In a similar case, Judge Albritton found that the Board of Trustees of Alabama State University was immunized by Eleventh Amendment immunity even against the plaintiff's claims for prospective injunctive relief.  *Williams*, 865 F. Supp. at 793. In *Williams*, as in this case, the plaintiff sued the Board of Trustees as an entity without naming the individual members of the Board in their official capacities. In dismissing the Board of Trustees, the court stated:

> The Eleventh Circuit has repeatedly held that even though the Eleventh Amendment does not bar suits against state officials in their official capacities for injunctive relief, the Eleventh Amendment does bar suits against the state entity of which the state official is employed. *See, e.g., Stevens v. Gay*, 864 F.2d 113, 114–15 (11th Cir. 1989) (Eleventh Amendment bars suits against a State and its Board of Corrections even though officials of the Board could have been sued for prospective injunctive relief.); *United States v. State of Alabama*, 791 F.2d 1450, 1457 (11th Cir. 1986) (Eleventh Amendment barred suit against the State Board of Education, but not against the individual members).

*Id.*  The court finds these cases persuasive, and similarly concludes that the Eleventh Amendment serves to immunize the Board of Trustees from all of Plaintiff's federal

claims in this case (except for Title VII), even to the extent they may arguably seek a form of prospective injunctive relief.[12]  Despite this conclusion, the court notes that to the remote extent that any of Plaintiff's claims for relief could potentially fall into the prospective relief exception to Eleventh Amendment immunity, those claims are nevertheless due to be dismissed for failure to state a claim under Rule 12(b)(6), as discussed *infra*.

### C.    Alabama Immunity[13]

As to Plaintiff's state law claims,[14] the Board of Trustees also correctly argues that it is entitled to governmental immunity under the Alabama Constitution.  Article I, § 14 of the Alabama Constitution provides generally that the State of Alabama is

---

[12]  The only form of relief Plaintiff asserts that could potentially fall into the category of prospective injunctive relief is her request for reinstatement to her former managerial position.  (Complt., Doc. 1 at 23 (seeking "[r]einstatement as a manager in the Addiction Recovery Program")).  The Eleventh Circuit apparently recognizes reinstatement, like front pay, as a form of prospective relief.  *See, e.g., Taylor v. Texgas Corp.*, 831 F.2d 255, 256 (11th Cir. 1987) (referring to "prospective relief in the form of reinstatement or front pay").

[13]  For the same reasons the court elected to apply the Rule 12(b)(1) standard to the Defendant's sovereign immunity defense, the court applies the same standard to the Defendant's Alabama immunity defense, which functions similarly as a type of jurisdictional bar.

[14]  The court notes that, although Defendant only raises Alabama immunity in the context of the state law claims alleged against it, such immunity may also extend to some of the federal claims against it, as Alabama immunity broadly shields the state and its agencies from suit "in any court of law or equity." Ala. Const. Art. I, § 14 (emphasis added); *but see Owen v. City of Independence*, 445 U.S. 622, 647 n. 30 (1980) (holding that "[c]onduct by persons acting under color of any state law which is wrongful under 42 U.S.C. § 1983 . . . cannot be immunized by state law").  Nevertheless, the scope of Alabama immunity is not an issue presently before the court, and the court need not reach it to resolve the arguments raised in Defendant's Motion.

immune from suit: "[T]he State of Alabama shall never be made a defendant in any court of law or equity." This constitutional provision "has been described as a 'nearly impregnable' and 'almost invincible' 'wall' that provides the State an unwaivable, absolute immunity from suit in any court." *Ex parte Town of Lowndesboro*, 950 So. 2d 1203, 1206 (Ala. 2006). Section 14 "specifically prohibits the State from being made a party defendant in any suit at law or in equity." *Hutchinson v. Board of Trustees of Univ. of Alabama*, 256 So. 2d 281, 283 (Ala. 1971). Additionally, under § 14, state agencies are "absolutely immune from suit." *Lyons v. River Road Constr., Inc.*, 858 So. 2d 257, 261 (Ala. 2003).

The Board of Trustees correctly asserts that it is a state agency entitled to state immunity pursuant to the Alabama Constitution. *See, e.g., Hutchinson,* 256 So.2d at 282 (affirming that the Board of Trustees of the University of Alabama was entitled to "governmental immunity" under Article I, Section 14 of the Alabama Constitution). Plaintiff does not persuasively controvert the cases and constitutional provision that clearly support Defendant's assertion of state immunity. Therefore, the court agrees with Defendant that Plaintiff's state law claims against it are due to be dismissed pursuant to Article I, Section 14 of the Alabama Constitution.

17

## III.  FAILURE TO STATE A CLAIM

### A.    Legal Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a motion to dismiss all or some of the claims in a complaint on the ground that its allegations fail to state a claim upon which relief can be granted.  Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  The court assumes the factual allegations in the complaint are true and gives the plaintiff the benefit of all reasonable factual inferences.  *Hazewood v. Found. Fin. Grp., LLC*, 551 F.3d 1223, 1224 (11th Cir. 2008) (per curiam).  However, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").  Nor is it proper to assume that the plaintiff can prove facts it has not alleged or that a defendant has violated the law in ways that have not been alleged.  *Twombly*, 550 U.S. at 563 n.8 (citing *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459

U.S. 519, 526 (1983)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations, brackets, and internal quotation marks omitted). "Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Id*. Thus, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" i.e., its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).

### B.      Title VII and ADEA Claims[15]

The law is well-settled that an employee must timely pursue and exhaust her administrative remedies as a precondition to filing an employment discrimination suit

---

[15]   The court considers Plaintiff's Title VII and ADEA claims together because they share common issues raised in both Motions to Dismiss and have similar legal frameworks relating to those issues. *See McKennon v. Nashville Banner Pub. Co*., 513 U.S. 352, 358 (1995) ("The ADEA and Title VII share common substantive features and also a common purpose: the elimination of discrimination in the workplace." (quotation omitted)); *see also Garcia*, 104 F.3d at 1264 (11th Cir. 1997) ("In interpreting ADEA's definition of 'employer,' Title VII cases are helpful. . . . The only notable difference between the two statutes' definitions of 'employer' is the number of 'employees' each statute requires.").

under Title VII or the ADEA.[16]  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792,

798 (1973) (Title VII); *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir.

2005) (ADEA); *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1317 (11th Cir. 2001).[17]

Though required, exhaustion of administrative remedies is not a "jurisdictional

requirement" such that it would divest the court of subject-matter jurisdiction.  *See*

*Zipes,* 455 U.S. at 393 (holding "that filing a timely charge of discrimination with the

EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement

that, like a statute of limitations, is subject to waiver, estoppel, and equitable

tolling"); *Jackson*, 678 F.2d at 1003 ("[T]he conditions precedent to filing a Title VII

suit are not jurisdictional prerequisites.").   Nevertheless, a plaintiff who does not

plausibly allege that she successfully exhausted administrative remedies cannot state

a claim under Title VII or the ADEA, and her claims would therefore be subject to

---

[16]   The court notes that Plaintiff in this case also alleges retaliation under Title VII. Because the facts supporting her retaliation claim occurred prior to the filing of her EEOC charge, that claim is also subject to Title VII's exhaustion requirement.  *Houston v. Army Fleet Services, L.L.C.*, 509 F. Supp. 2d 1033, 1043 (M.D. Ala. 2007) ("If . . . the alleged retaliatory action occurs *before* the initial EEOC charge is filed, a plaintiff must exhaust his administrative remedies as to that claim by including factual information in the charge that discloses the factual basis for the retaliation claim." (emphasis in original)).  Here, Plaintiff properly included the facts concerning retaliation in her EEOC charge.  (See Doc. 17-1).

[17]   Notably, while Title VII requires that a plaintiff possess a valid right to sue notice before instituting suit, the ADEA does not. *See Grayson v. K Mart Corp.*, 79 F.3d 1086, 1100 (11th Cir. 1996) ("Unlike Title VII, the ADEA does not require that the plaintiff first receive a right to sue notice from the EEOC prior to commencing suit."); *see also* 29 U.S.C. § 626(d) (providing that a plaintiff may initiate an ADEA action after the mandatory 60-day statutory waiting period).

dismissal pursuant to Rule 12(b)(6).  *See* Fed. R. Civ. P. 12(b)(6); *supra* note 7.

The Board of Trustees asserts that Plaintiff has failed to exhaust her administrative remedies in relation to the Title VII and ADEA claims raised in her EEOC charge for two reasons.  The Board of Trustees first contends that because it is not Plaintiff's employer and it was never served with or responded to Plaintiff's EEOC charge, Plaintiff has not exhausted her administrative remedies against it, and therefore cannot state a claim upon which relief can be granted.  Second, it argues in the alternative that Plaintiff does not possess a valid EEOC right-to-sue notice because the notice was subsequently revoked.[18]

The court agrees with the Board of Trustees that Plaintiff's allegations are insufficient to sustain a plausible conclusion that the Board of Trustees is her employer and that she successfully exhausted her administrative remedies against it.  Both Title VII and the ADEA authorize discrimination claims against an "employer."[19]  As such, the relevant issue becomes, "Who is Plaintiff's 'employer'

---

[18]   Because the court agrees with the Board of Trustees on its first contention, it need not reach the second.  Nevertheless, for the reasons fully elaborated in the court's Memorandum Opinion addressing Defendant UAB Health System's Motion To Dismiss, which the court adopts and incorporates here, the court does not agree that the purported revocation notice, attached as Exhibit B to the Board's Motion, serves to cancel or revoke Plaintiff's valid right to sue.

[19]   *See* 42 U.S.C. § 2000e-2 ("It shall  be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. . . .")

for purposes of alleging a *prima facie* claim under Title VII and the ADEA?"  The answer is clear, at least in part.  Defendant UAB Health System admitted in its pleadings that "it currently employs Plaintiff," and "has employed Plaintiff since 2004." (Answer to Complt., Doc. 15 at 7 ¶ 6, and 14 ¶ 74).  Notably, in its Motion To Dismiss briefing, UAB Health System does not challenge its status as Plaintiff's employer, nor does it contest the fact that it was served with <u>and responded to</u> Plaintiff's EEOC charge.   Moreover, the record before the court undisputedly establishes that counsel for UAB Health System did, in fact, receive and respond to Plaintiff's EEOC charge.   (See Doc. 17-5).  Therefore, it is undisputed that UAB Health System is Plaintiff's "employer" for purposes of her Title VII and ADEA claims.  It is also undisputed that UAB Health System was properly named on Plaintiff's EEOC charge, responded to the charge, and participated in the EEOC's investigation of that charge.

The Board of Trustees, however, denies that it is Plaintiff's employer, and provides an affidavit of its HR Director explaining that its records show that Plaintiff

---

(emphasis added); *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1262-63 (11th Cir. 1997) ("From the plain language of the statute, it appears the elements of an ADEA claim under § 623(a)(1) can be summarized as follow[s], a plaintiff must prove: 1) <u>an employer</u>, 2) failed or refused to hire or to discharge, 3) any individual, 4) with respect to his compensation, terms, conditions, or privileges of employment, 5) because of such individual's age. Stated simply, it seems <u>a plaintiff can only recover if he is able to prove an 'employer' discriminated against him/her on the basis of age</u>." (emphasis added)).

is not currently employed by UAB, <u>nor has the office received or responded to any</u> <u>charge of discrimination from the Plaintiff</u>.  (Aff. of Anita Bonasera, Doc. 13, Ex. A). Plaintiff sought to refute Ms. Bonasera's affidavit by attaching several documents to her response, which included the original EEOC charge and filings referenced in her Complaint, as well as several pieces of correspondence from the EEOC investigator and the district director to Plaintiff's attorney and respondents relating to Plaintiff's charge number.  (See Doc. 17, Exs. 1-8).[20]  Notably, however, Plaintiff does not directly controvert the sworn statement of Ms. Bonasera that the Board of Trustees office never received or responded to Plaintiff's EEOC charge.  Instead, Plaintiff merely states that her EEOC charge "clearly list[ed] the University of Alabama as an

---

[20]  The authenticity of the EEOC documents, including the initial charge and subsequent correspondence with the local EEOC office, is not challenged by the Defendant.  Because the documents are undisputed, provided by the Plaintiff, and central to her claims, the court may properly consider them when ruling on the Motion To Dismiss.

> In appeals of Rule 12(b)(6) dismissals, it is generally true that the "scope of the review must be limited to the four corners of the complaint." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). If matters outside the pleadings are presented by the parties and considered by the district court, the Rule 12(b)(6) motion must be converted into a Rule 56 summary judgment motion. Fed. R. Civ. P. 12(d). This Court, however, has recognized an important qualification to this rule where certain documents and their contents are undisputed: "In ruling upon a motion to dismiss, the district court may consider an extrinsic document if it is (1) central to the plaintiff's claim, and (2) its authenticity is not challenged." *SFM Holdings, Ltd. v. Banc of Am. Secs.*, LLC, 600 F.3d 1334, 1337 (11th Cir. 2010); *see also Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999) (stating that "a document central to the complaint that the defense appends to its motion to dismiss is also properly considered, provided that its contents are not in dispute").

*Speaker v. U.S. Dep't of Health and Human Servs. Ctrs. for Disease Control & Prevention,* 623 F.3d 1371, 1379 (11th Cir. 2010).

employer/respondent with a corresponding address of 500 22nd Street, South, Birmingham, AL 35204," and therefore, "[i]t is clear that [P]laintiff requested and contended that Defendant Board of Trustees should be served as a co-employer." (Doc. 17 at 5-6).

The court does not find it at all "clear" that Plaintiff "requested and contended" that her EEOC charge be served on the Defendant Board of Trustees, nor does the court find any allegations in Plaintiff's Complaint sufficient to support a conclusion that the Board of Trustees was named in the EEOC charge, or that it was served with the charge. First, Plaintiff never identified or even mentioned the "Board of Trustees" anywhere in the text of her EEOC charge. (See Doc. 17-1).[21] Second, the address which Plaintiff listed on her EEOC charge for the "University of Alabama" is different from the address(es) she listed on her service of process paperwork for the Board of Trustees in this case. *Cf.* Doc. 4 (requesting service upon the "Board of Trustees, University of Alabama c/o Dr. Malcolm Portera, 401 Queen City Avenue, Tuscaloosa, AL 35401"); Doc. 5 (requesting service upon the "Board of Trustees,

---

[21]  Plaintiff's EEOC charge named two entities as her employer: 1) "University of Alabama" at 500 22nd Street South, Birmingham, AL 35204, and 2) "UAB Hospital/Center for Psychiatric Medicine" at 1753 6th Ave. S., Birmingham, AL 35294. (Doc. 17-1). Although the pleadings, as currently developed, do not confirm which entity, or entities, actually responded to Plaintiff's EEOC charge, the undisputed July 27, 2011 EEOC letter provided by Plaintiff indicates that Defendant UAB Health System did so respond. (Doc. 17-5 ("A review of the charge file confirms that the Respondent's attorney provided information which identified UAB Health System as the respondent in the above-referenced charge.")).

University of Alabama c/o Hon. Luther Strange, Attorney General, 501 Washington Ave., Montgomery, AL 36104").  Moreover, the address Plaintiff listed on her EEOC charge for "University of Alabama," 500 22nd Street South, Birmingham, AL 35204, is apparently the address of Defendant UAB Health System, not that of the Board of Trustees.  *See* Docs. 17-3 and 17-4 (Plaintiff's exhibits reflecting correspondence from the EEOC to Joseph Jacobs, Human Resources Manager for "UAB Hospital/Center for Psychiatric Medicine" at 500 22nd Street South, Birmingham, AL 35204); *see also* Docs. 3 and 4 (Plaintiff's requests for service upon UAB Hospital/Center for Psychiatric Medicine and UAB Health System at the 500 22nd Street South address).

Turning to Plaintiff's Complaint,  Plaintiff's sole grounds for asserting that the Board of Trustees is also her "employer" (in addition to UAB Health System) rests on her conclusory allegation of joint and several employment.  (Complt., Doc. 1 ¶ 11 ("Defendants, at all time relevant herein, jointly and severally, employed, supervised, and controlled Plaintiff in her duties, and were employer(s) as defined by and within the meaning of 42 U.S.C. § 2000e(b) and 29 U.S.C. § 630(b).")).  The court is not bound to accept this type of conclusory legal allegation as true when assessing a Motion To Dismiss pursuant to Rule 12(b)(6).  *Twombly*, 550 U.S. at 555 ("[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'"

(quoting *Papasan*, 478 U.S. at 286)).  Based on the totality of the Complaint and the undisputed facts before the court that unequivocally demonstrate UAB Health System's status as Plaintiff's actual employer, the court cannot plausibly conclude that the Board of Trustees is also her employer for Title VII and ADEA purposes.

Beyond the Complaint, Plaintiff attempts to bolster her joint employment theory in her response to Defendant's Motion To Dismiss by arguing that "[t]he Center for Psychiatric Medicine is the product of a joint operating agreement entered into or extended by the defendants on December 11, 2003." (Doc. 17 at 6).  As evidence of this "joint operating agreement," which is not alleged in the Complaint, Plaintiff attached to her response brief "the only summary she could find of this joint agreement as Exhibit B." (*Id.*).  Exhibit B, from best the court can tell, appears to be a portion of a PowerPoint slide or other presentation, of unknown origin and authorship.  As the exhibit is completely unauthenticated, and not self-authenticating, the court does not consider it.  Moreover, because Defendant disputes its authenticity, the court *cannot* consider the exhibit without converting to the Rule 56 summary judgment standard.  *Speaker,* 623 F.3d at 1379.  As for the argument in Plaintiff's brief that a joint operating agreement exists, statements of counsel do not constitute evidence.  *United States v. Jacoby*, 955 F.2d 1527, 1541 (11th Cir. 1992) (recognizing that "statements of counsel are not evidence").

26

In sum, Plaintiff has not alleged or shown that the Board of Trustees was properly served with the EEOC charge, that it responded to the charge, that it had notice of the charge, or that it had the opportunity to participate in the EEOC's conciliation process.   As a practical matter, subjecting a party to litigation when the administrative remedies have not been exhausted as to that party unfairly deprives that party of the two-fold purpose of the EEOC process: notice and the opportunity to participate in the pre-litigation conciliation process.   *Virgo v. Riviera Beach Assocs., Ltd.,* 30 F.3d 1350, 1358 (11th Cir. 1994) ("Ordinarily, a party not named in the EEOC charge cannot be sued in a subsequent civil action.   This naming requirement serves to notify the charged party of the allegations and allows the party an opportunity to participate in conciliation and voluntarily comply with the requirements of Title VII." (citations omitted)).

For all these reasons, Plaintiff's Title VII and ADEA claims against the Board of Trustees are due to be dismissed pursuant to Rule 12(b)(6) for failure to exhaust administrative remedies.[22]   The court finds that it is not plausible to conclude, based on the allegations in Plaintiff's Complaint and the undisputed EEOC documents

---

[22]   In reaching this conclusion, the court emphasizes that, if she prevails, Plaintiff can still obtain the full measure of relief requested against the remaining Defendant, UAB Health System, which admits that it is her *actual* employer, and that it received and responded to her EEOC charge against it.   Therefore, the court's decision to dismiss Plaintiff's claims against the Board of Trustees in no way limits her opportunity to recover damages in this lawsuit.

provided by Plaintiff, that she has exhausted her administrative remedies as to the Board of Trustees.  Without this administrative prerequisite being met, her Title VII and ADEA claims against the Board of Trustees are due to be dismissed. Accordingly, the Board of Trustees Motion is due to be granted to the extent it seeks dismissal of Plaintiff's Title VII and ADEA claims.

### C.       § 1981 Retaliation Claim[23]

As amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981(a) provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a) (emphasis added).  Accordingly, § 1981 creates a substantive statutory remedy for employment discrimination.  The remedy is similar to, though independent from, Title VII.  The procedures for enforcing § 1981 are simpler than Title VII, but the substantive law and remedies are largely the same.  *See Ash v. Tyson Foods, Inc.*, 664 F.3d 883 (11th Cir. 2011) ("[T]he analytical framework and rules about employer liability under Title VII and § 1981 are the same.").  Unlike Title VII,

---

[23]  Unlike Title VII and the ADEA, Plaintiff's § 1981 retaliation claim is not subject to any administrative exhaustion of remedies requirement. *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) (recognizing that  § 1981 "does not have an exhaustion of administrative remedies requirement").

however, § 1981 claims in the employment context are based on the equal right to make and enforce contracts.  Additionally, unlike Title VII, § 1981 claims are limited to *race* discrimination.  *See Little v. United Technologies, Carrier Transicold Div.*, 103 F.3d 956, 960-61 (11th Cir. 1997) ("It is well-established that § 1981 is concerned with *racial* discrimination in the making and enforcement of contracts." (emphasis in original)).

Accordingly, the *prima facie* elements that govern Plaintiff's § 1981 retaliation claim are essentially the same as those governing Title VII retaliation: "A plaintiff asserting a retaliation claim under Title VII must show that: (1) he engaged in statutorily protected activity; (2) he suffered a materially adverse action; and (3) there was a causal connection between the protected activity and the adverse action." *Howard v. Walgreen Co.,* 605 F.3d 1239, 1244 (11th Cir. 2010) (footnote omitted). However, the protected activity in a § 1981 retaliation claim is limited to race.  *See Little*, 103 F.3d at 961 (noting the differences between § 1981 retaliation versus Title VII retaliation and finding that the plaintiff "failed to establish a *prima facie* case with respect to his § 1981 claim" where "there [wa]s no evidence in the record---and [the plaintiff did]  not suggest or allege---that the discrimination or retaliation allegedly levelled against him <u>was due to his race</u>" (emphasis added)).

In the Eleventh Circuit, a  § 1981 plaintiff has no direct cause of action against

a state actor, such as the Board of Trustees. *Bryant v. Jones*, 575 F.3d 1281, 1288 (11th Cir. 2009) ("We have held that § 1981 does not provide an implicit cause of action against state actors; therefore, § 1983 constitutes the exclusive federal remedy for violation by state actors of the rights guaranteed under § 1981. *See Butts v. County of Volusia*, 222 F.3d 891, 894-95 (11th Cir. 2000)."). Here, Plaintiff correctly brings her § 1981 claim through § 1983,[24] so that requirement is met.

To prevail in a civil rights action under § 1983, "a plaintiff must make a *prima facie* showing of two elements: (1) that the act or omission deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a person acting under color of law." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

In light of this legal framework, the court assesses Defendant's 12(b)(6) motion as applied to Plaintiff's § 1981 retaliation claim under both § 1981 and § 1983. Ultimately, Plaintiff fails to state a claim under either statute.

First, the Board of Trustees is not a suable entity under § 1983, as it is not a

---

[24] Significantly, § 1983 does not itself create or establish any federally protected right; instead, it creates a cause of action for plaintiffs to enforce federal rights created elsewhere, either by the federal Constitution or, in some cases, by federal statute, such as § 1981. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989) ("[A] principle purpose behind the enactment of § 1983 was to provide a federal forum for civil rights claims.").

"person" subject to suit under that statute.  The Supreme Court in *Will v. Michigan Department of State Police* squarely addressed the issue of whether a state is a "person" for purposes of § 1983 liability,[25] and answered that it is not.  491 U.S. at 71  ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *see also Lapides v. Board of Regents of Univ. of Ga.*, 535 U.S. 613, 617 (2002) ("[W]e have held that a State is not a 'person' against whom a § 1983 claim for money damages might be asserted." (citing *Will*, 491 U.S. at 66)).

The exclusion of states from § 1983 liability naturally extends to state entities and agencies, such as state universities and their boards of trustees.  For instance, this court, citing *Will* and *Lapides*, has previously held that Alabama A&M, as an agency of the state, is not a "person" that can be sued for money damages under 42 U.S.C. § 1983.  *Ogburia v. Ala. Agricultural & Mechanical Univ., et al*, Case No. 5:06-CV-2275-VEH, Doc. 19 at 5 (N.D. Al. Mar. 5, 2007).  Likewise, the court here finds that the University of Alabama Board of Trustees is not a "person" subject to a § 1983 suit for money damages.

Second, Plaintiff also fails to allege a *prima facie* § 1981 retaliation claim.  In her retaliation claim, Plaintiff alleges that "[a]fter [she] filed her charge with the

---

[25]   The Supreme Court in *Will* considered the § 1983 issue in the context of a promotion denial claim against Michigan's Department of State Police and the Director of State Police in his official capacity.  491 U.S. at 58.

31

E.E.O.C., she began to experience instances of retaliation," and alleges by way of a singular example that "her office was taken and she was reassigned to the 'urine specimen room' as an office." (Complt., Doc. 1 ¶¶ 60-61).  However, nowhere in the Complaint does Plaintiff allege any interference with her right to make or enforce a contract with the Board of Trustees, which highlights the problem of the insufficient allegations of joint employment between the Board and UAB Health System, discussed *supra*.  As previously explained, the court cannot reasonably infer from the Complaint that the Board of Trustees is Plaintiff's legitimate employer (and if the Board was not her employer, it was not in a position to execute the retaliatory actions alleged in the Complaint, which related to her office environment).

Moreover, similar to the deficient retaliation claim described in *Little*, 103 F.3d at 961, Plaintiff's retaliation claim, as alleged, is not based on her *race* but based on her filing of an EEOC charge.  She alleges that her office was taken and she was reassigned to the "urine specimen room" as her office as retaliation after filing her EEOC charge.  In other words, she does not allege that the retaliation (moving her office) was because of her skin color but because she had filed an administrative grievance.  Based on the Eleventh Circuit's analysis in *Little*, that allegation is not sufficient to establish a *prima facie* claim of § 1981 retaliation.

Therefore, under either reasoning, Plaintiff does not allege facts sufficient to

32

support a § 1981 retaliation claim against the Board of Trustees because she cannot state a claim under § 1981 or § 1983.  The court concludes that, even if it were not barred under Eleventh Amendment sovereign immunity, see discussion *supra*, Plaintiff's § 1981 retaliation claim against the Board of Trustees, brought by and through § 1983, is alternatively due to be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

### D.    Fourteenth Amendment Equal Protection Claim

The Fourteenth Amendment of the United States Constitution provides, in part:

> All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside.  No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV.  Thus, the various clauses of the Fourteenth Amendment provide different civil rights remedies.  Here, Plaintiff brings her claim pursuant to the Equal Protection Clause of the Fourteenth Amendment.  Plaintiff asserts her constitutional right to equal protection by and through § 1983, which provides the statutory remedy to address violations of the Fourteenth Amendment.  *See* 42 U.S.C. § 1983 (creating a civil right of action to remedy "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws").

33

Unlike Title VII and the ADEA, Plaintiff's Fourteenth Amendment Equal Protection claim, brought by and through § 1983, is not subject to an administrative exhaustion of remedies requirement.[26]

Further, "[t]he Eleventh Circuit has held that Section 1983 may be used as a parallel remedy to Title VII for gender or race discrimination which violates the equal protection clause of the Fourteenth Amendment. The elements of such a claim are the same as the elements of a Title VII action. *Cross v. State of Alabama*, 49 F.3d 1490, 1507–08 (11th Cir. 1995) (citing *Hardin v. Stynchcomb*, 691 F.2d 1364, 1369 n. 16 (11th Cir. 1982))." *Rice-Lamar v. City of Fort Lauderdale*, 54 F. Supp. 2d 1137, 1145 (S.D. Fla. 1998). "In a traditional employment case brought under the Equal Protection Clause, an employee asserts that he was discriminated against on account of his membership in an identifiable or protected class, such as race, religion, sex, or national origin." *Alford v. Consol. Gov't of Columbus, Ga.*, 438 Fed. App'x

---

[26] The Eleventh Circuit has taken the position that § 1983 claims are not subject to exhaustion of state administrative remedies. *See Grandison v. Smith*, 779 F.2d 637, 642 (11th Cir. 1988) ("There is no exhaustion of state remedies requirement for Section 1983 claims." (citing *Patsy v. Fla. Bd. of Regents*, 457 U.S. 496, 516 (1982); *McNeese v. Bd. of Educ.*, 373 U.S. 668, 671–73 (1963); *S. Railway Co. v. State Bd. of Equalization*, 715 F.2d 522, 529 (11th Cir.1983), *cert. denied*, 465 U.S. 1100 (1984)). By contrast, several circuits have taken the position that a § 1983 plaintiff must exhaust available state administrative remedies before bringing suit, unless those remedies are inadequate or resorting to them would be futile. *E.g., Eisen v. Eastman*, 421 F.2d 560, 569 (2d Cir. 1969) (holding, in a civil rights case brought pursuant to § 1983, that "[e]xhaustion of state administrative remedies is not required where the administrative remedy is inadequate . . . or where it is certainly or probably futile").

837, 839-40 (11th Cir. 2011) (citations omitted).

As previously stated, the elements for a § 1983 claim are "(1) that the act or omission deprived plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States, and (2) that the act or omission was done by a person acting under color of law." *Marshall Cnty. Bd. of Educ.*, 992 F.2d at 1174.

Here, Plaintiff fails to state a claim under either prong of the § 1983 analysis. For the same reasons stated above, the Board of Trustees is not a "person" acting under color of state law.  Therefore, Plaintiff cannot plausibly state a claim against the Board of Trustees under § 1983 as required by the second prong.

Additionally, under the first prong of § 1983 analysis, Plaintiff fails to state a *prima facie* claim for a violation of the Fourteenth Amendment's Equal Protection Clause.  Because the Equal Protection Clause borrows from Title VII elements and analysis, *Cross*, 49 F.3d at 1507–08, Plaintiff again fails to state a claim because she has not plausibly alleged that the Board of Trustees is her "employer," as discussed *supra.*  Moreover, in her Fourteenth Amendment's Equal Protection claim (Complt., Doc. 1 ¶¶ 65-72), Plaintiff pleads no specific facts to support her conclusory allegations of intentional discrimination based on race (*id.* ¶ 68) and disparate treatment based on race (*id.* ¶ 69).   Instead, in shotgun fashion, she simply

35

incorporates by reference all other facts previously described in the Complaint.  As the court previously stated, it is not obligated to accept Plaintiff's conclusory legal assertions as true for the purposes of a motion to dismiss.  *Twombly*, 550 U.S. at 555.  Threadbare legal conclusions without any factual support will not suffice under Rule 12(b)(6)'s standard, as interpreted by *Iqbal* and *Twombly*.  The court need not, and does not, accept Plaintiff's legal conclusions, couched as factual allegations, as true.

Under either reasoning, Plaintiff fails to state a claim against the Board of Trustees on her Fourteenth Amendment Equal Protection claim.  Therefore, the court alternatively finds that Plaintiff's Fourteenth Amendment Equal Protection claim against the Board of Trustees, brought by and through § 1983, is due to be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## IV.   CONCLUSION

For all these reasons, the court finds that the Defendant's Motion is due to be **GRANTED**.  In sum, all claims against the Board of Trustees are due to be dismissed as follows:

(1)   Plaintiff's Title VII (race discrimination and retaliation) and ADEA claims are due to be dismissed under Rule 12(b)(6) for failure to exhaust remedies and, alternatively, for failure to state a claim;

(2)   Plaintiff's § 1981 retaliation claim, brought by and through § 1983, is

36

due to be dismissed pursuant to Eleventh Amendment sovereign immunity, and alternatively, is due to be dismissed under 12(b)(6) for failure to state a claim;

(3)     Plaintiff's Fourteenth Amendment Equal Protection claim, brought by and through § 1983, is due to be dismissed pursuant to Eleventh Amendment sovereign immunity, and alternatively, is due to be dismissed under 12(b)(6) for failure to state a claim; and

(4)     Plaintiff's state law claims are due to be dismissed pursuant to Alabama governmental immunity.

Accordingly, with no claims remaining against it, the Board of Trustees is due to be dismissed from this case.  The court will enter a separate Order consistent with this Memorandum Opinion.

**DONE** and **ORDERED** this the 27th day of February, 2012.

**VIRGINIA EMERSON HOPKINS**
United States District Judge

37